Thomas C. CONWAY et al., Appellants,

v.

UNITED STATES of America,
Defendant, Appellee.

No. 5466.

United States Court of Appeals
First Circuit.

May 31, 1960.

John M. Maguire, Boston, Mass., with whom C. Keefe, Hurley, John Kimball, Jr., and Hale & Dorr, Boston, Mass., were on brief, for appellants.

David O. Walter, Atty., Dept. of Justice, with whom Abbott M. Sellers, Acting Asst. Atty. Gen., Lee A. Jackson, and Harry Marselli, Attys., Dept. of Justice, Anthony Julian, U. S. Atty., and Andrew A. Caffrey, Asst. U. S. Atty., Boston, Mass., were on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

This is an appeal from a decision of the district court, sitting without jury, finding appellants, husband and wife, liable for deficiencies in income tax payments for the years 1939 to 1948, inclusive, together with fraud penalties and interest. The husband will hereinafter be referred to as the taxpayer. Essentially the only question raised is whether the evidence warranted the findings as to the dollar amounts of the several deficiencies. That the amounts were in any event substantial, is not disputed, and the finding of fraud is not attacked. Or, as taxpayer states in his brief with more delicacy, "The real and consistent fact is that Dr. Conway's returns for 1934–1948 at no time mirrored the full truth." The criticism is that the court found deficiencies in accordance with the testimony of the revenue agents. This testimony, based upon "the bewildering net worth approach," as taxpayer describes it, he characterizes as "sedentary prefabrication," "financial distortions," "imaginative mathematics," "airy-fairy deductions," and "mere whimsicality," as distinguished from "commonsensible interpretation of matter in the record." We find such attributions more arresting than accurate.

Taxpayer, at the outset, charges that "the trial judge's handling of the present case casts an improper burden upon the patience of the Appellate Court." We

have been more impeded by statements throughout taxpayer's brief of seemingly positive fact which prove, on examination, to be nothing but taxpayer's unsupported testimony. Taxpayer says that he has cited only testimony that the trial court has not found to be false. Even were that so, in view of the fact that the court has found vital parts of his testimony to be deliberate concoctions, and has found all of his returns fraudulently false, the suggestion that its general findings must be set aside as clearly erroneous because of taxpayer's testimony not specifically found to be false does not commend itself.[1]

■ Taxpayer raises various contentions more or less standard to net worth cases. First, he asserts that the government evidence of his net worth at the opening of the period, adopted by the court, must be rejected because of his own testimony that he then had a hoard of small bills in the dining room sideboard totaling $55,000. It is sufficient to say that the court had good cause to disbelieve this testimony. Next, he objects because the government used the net worth method at all, instead of adopting "the one piece of solid bookkeeping foundation available in this case,"—his own books. The court was not bound to accept taxpayer's books, the more particularly as they contained important, unexplained inaccuracies, and were subject to other criticism.

■ Finally, taxpayer complains that the government's computations, even if correct in the aggregate, produced unlikely variations in attributed income as between individual years, with a corresponding effect upon surtaxes. This fact might affect the weight to be given to the testimony, but it could not render it entirely unacceptable. The total finding for the ten year period was abundantly warranted. Risk of anachronous allocation is inherent in any case where a taxpayer fails to maintain full and accurate records. He cannot be heard to complain if the record shows sufficient basis for the findings, in spite of possible criticism of the pattern of the result. We are satisfied in the main that the record does so here.[2] The most that can be said for taxpayer (other than with respect to the two items referred to in the footnote), is that in some years certain increases of net worth first appeared as a result of bank deposits, or purchases of securities, made by taxpayer in the month of January, and the government, in such instances, considered these sums as income received in the year of appearance, while taxpayer says they must, at least in part, have been received by him earlier. In no instance was there a record, or affirmative evidence, attributing such funds to any specific payments on any particular date. In these circumstances we would not hold plainly wrong a rule of thumb allocating the income to the year in which it first came to light. The government is not obliged to prove its case beyond a reasonable doubt. Bryan v. Commissioner of Internal Revenue, 5 Cir., 1954, 209 F.2d 822, certiorari denied 348 U.S. 912, 75 S.Ct. 289, 99 L.Ed. 715.

Judgment will be entered affirming the judgment of the District Court with the exception of the principal amount of recovery, and remanding the case for redetermination of said principal amount by making appropriate adjustment in accordance with this opinion.

1. Taxpayer similarly interjects as established fact certain matter which it subsequently appears was merely sought to be introduced by a motion for new trial, and which directly contradicted certain information that his accountant had furnished the government before trial, and has testified in accordance with at the trial. The court denied the motion for new trial. We find no abuse of discretion.

2. The government on this appeal has acknowledged two small errors in this regard, and has stipulated in its brief to make the appropriate adjustment.