**Bruce and Ann DZUIRA, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civil Action No. 96–30063–MAP.**

United States District Court,
D. Massachusetts.

June 10, 1997.

Gerald Glasser, Kalill, Glasser & Senecal, Springfield, MA, for Plaintiff.

Karen A. Smith, George P. Eliopoulos, U.S. Dept. of Justice Tax Div., Washington, DC, for Defendant.

PONSOR, District Judge.

Upon de novo review this Report and Recommendation is hereby adopted without opposition; the motion to dismiss is ALLOWED, without prejudice to the filing of an amended complaint on or before June 27, 1997. So ordered.

*REPORT AND RECOMMENDATION RE-
GARDING THE UNITED STATES'
MOTION TO DISMISS (Docket No. 12)*

NEIMAN, United States Magistrate
Judge.

## I. *INTRODUCTION*

In this case, Plaintiffs Bruce and Ann
Dzuira ("Plaintiffs") claim that the Internal
Revenue Service ("IRS") sold one of their
Andrew Wyeth watercolors—which the IRS
had seized in order to satisfy a tax obli-
gation—for far less than what the painting
was worth. Plaintiffs seek to have the differ-
ence credited to their tax account. Current-
ly pending is the IRS's motion to dismiss the
complaint for lack of subject matter jurisdic-
tion (Docket No. 12), which has been re-
ferred to this Court for a report and recom-
mendation. *See* 28 U.S.C. § 636(b)(1)(B).
For the reasons stated below, the Court rec-
ommends that the motion to dismiss be AL-
LOWED without prejudice to Plaintiffs filing
an amended complaint.

## II. *STANDARD OF REVIEW*

A motion to dismiss for lack of subject
matter jurisdiction requires a court to "ac-
cept the factual averments of the complaint
as true, and construe those facts in the light
most congenial to the [plaintiff]'s cause."
*Royal v. Leading Edge Products, Inc.*, 833
F.2d 1 (1st Cir.1987) (citing *Guessefeldt v.
McGrath*, 342 U.S. 308, 310, 72 S.Ct. 338,
340, 96 L.Ed. 342 (1952)). When faced with
such a motion, the party asserting jurisdic-
tion has the burden of proving that it exists.
*Coventry Sewage Associates v. Dworkin Re-
alty Co.*, 71 F.3d 1, 4 (1st Cir.1995).

## III. *BACKGROUND*

The facts alleged in the complaint are as
follows. The IRS—having assessed a defi-
ciency against Plaintiffs for their joint feder-
al income tax returns for the 1989–1992 tax-
able years—seized from Plaintiffs a 1982
Andrew Wyeth watercolor entitled "Deer
Crossing." A second Wyeth was also seized,
but is not the subject of this suit.

The IRS valued "Deer Crossing" at $100,-
000. Based on this valuation, the IRS, in
May of 1993, determined that the minimum
bid price of the painting at a forced sale
should be $60,000. When offered at that
price, however, the painting did not sell, the
IRS did not buy "Deer Crossing" itself, and
the painting was not returned to Plaintiffs.
Instead, the painting continued to be held by
the auctioneer.

In December of 1993, the IRS redeter-
mined the minimum bid price of "Deer
Crossing" at $30,000. The IRS held a second
sale in May of 1994 at which time the paint-
ing was sold for $30,000. In June of 1995,
Plaintiffs filed with the IRS a request for an
adjustment, seeking a $30,000 credit—the
difference in the initial minimum bid price
($60,000) and the sale price ($30,000). The
IRS did not take any action on Plaintiffs'
request.

Plaintiffs filed this complaint on April 16,
1996, citing 28 U.S.C. § 1346 as the basis for
jurisdiction. The parties' memoranda of law
regarding the motion to dismiss were filed by
April 4, 1997. Having heard oral argument
on the motion on April 16, 1997, the Court
now offers its recommendation.

## IV. *DISCUSSION*

The IRS asserts that the complaint must
be dismissed because the IRS has not waived
its immunity to be sued and, as such, there
can be no subject matter jurisdiction. As
sovereign, the United States may not be sued
without its consent. *United States v. Dalm*,
494 U.S. 596, 608, 110 S.Ct. 1361, 1368, 108
L.Ed.2d 548 (1990); *Murphy v. United
States*, 45 F.3d 520, 522 (1st Cir.), *cert. de-
nied*, 515 U.S. 1144, 115 S.Ct. 2581, 132
L.Ed.2d 831 (1995). The terms of the United
States' consent to be sued in court define
that court's jurisdiction to entertain the suit.
*United States v. Mitchell*, 445 U.S. 535, 538,
100 S.Ct. 1349, 1351–52, 63 L.Ed.2d 607
(1980). Generally, "statutes waiving sover-
eign immunity should be strictly construed in
favor of the United States." *Murphy*, 45
F.3d at 522 (citations omitted). A court may
not, therefore, "enlarge beyond what the lan-
guage of the statute creating the waiver re-
quires." *Id.* (citations and internal quotation
marks omitted).

Although the complaint does not cite a basis for the waiver of sovereign immunity, it claims jurisdiction under 28 U.S.C. § 1346. This statute will be addressed first followed by a discussion of several other statutes mentioned in the parties' submissions, namely, 26 U.S.C. §§ 6335, 7433 and 28 U.S.C. § 2410.

## A. *28 U.S.C. § 1346*

Section 1346 of Title 28 waives, in subsection (a)(1), the United States' sovereign immunity for tax refund suits.[1] This statutory waiver of sovereign immunity has been construed to require a taxpayer to pay the entire tax deficiency assessed by the IRS *before* he may sue for a refund. *See, e.g., Flora v. United States,* 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958), *aff'd on reh'g,* 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960); *Conway v. United States,* 168 F.Supp. 656, 660 (D.Mass.1958), *aff'd,* 278 F.2d 710 (1st Cir. 1960). The rule that a refund claim must be filed prior to filing suit derives from 26 U.S.C. § 7422(a).[2]

Here, Plaintiffs acknowledge that they did not make such payment before suit was filed, although they have since paid their taxes in full. Plaintiffs are thus not eligible for a waiver of sovereign immunity under section 1346. Plaintiffs concede as much. Accordingly, as it presently reads and without more, the complaint should be dismissed for lack of subject matter jurisdiction.

## B. *26 U.S.C. § 6335 and 28 U.S.C. § 2410*

Plaintiffs' opposition to the motion to dismiss, however, seeks relief in 26 U.S.C. § 6335, which in subsection (e) outlines the manner and conditions of an IRS sale of seized property.[3] Plaintiffs also rely, in part, on corresponding Treasury regulations, 26 C.F.R. § 301.6335–1, and applicable provisions of the Internal Revenue Manual ("IRM"). Indeed, the crux of Plaintiffs' claim is that certain procedures set forth in section 6335(e), together with corresponding parts of the regulations and the IRM, were not followed. Most specifically, Plaintiffs claim, the IRS, having effectively decided not to purchase "Deer Crossing" itself at auction, failed to return the painting to Plaintiffs once the first sale was unable to produce a buyer.

1. Section 1346(a)(1) provides, in pertinent part, as follows:

   The district courts shall have original jurisdiction ... of ... [a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws.

2. Section 7422(a), entitled "No suit prior to filing claim for refund," states:

   No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary [of the IRS], according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

3. In particular, section 6335(e)(1) provides the following general provisions:

   (A) Determinations relating to minimum price.—Before the sale of property seized by levy, the Secretary [of the IRS] shall determine—(i) a minimum price for which such property shall be sold (taking into account the expense of making the levy and conducting the sale), and (ii) whether, on the basis of criteria prescribed by the Secretary, the purchase of such property by the United States at such minimum price would be in the best interest of the United States.

   (B) Sale to highest bidder at or above minimum price.—If, at the sale, one or more persons offer to purchase such property for not less than the amount of the minimum price, the property shall be declared sold to the highest bidder.

   (C) Property deemed sold to United States at minimum price in certain cases.—If no person offers the amount of the minimum price for such property at the sale and the Secretary has determined that the purchase of such property by the United States would be in the best interest of the United States, the property shall be declared to be sold to the United States at such minimum price..

   (D) Release to owner in other cases.—If, at the sale, the property is not declared sold under subparagraph (B) or (C), the property shall be released to the owner thereof and the expense of the levy and sale shall be added to the amount of tax for the collection of which the levy was made. Any property released under this subparagraph shall remain subject to any lien imposed by subchapter C.

■ While the IRS acknowledges for purposes here that it violated the technical requirements of section 6335 when it failed to return the painting to Plaintiffs, it counters by stating that section 6335, by its own terms, does not provide a waiver of sovereign immunity. Although caselaw on this issue is sparse, the IRS's position is supported by several unreported district court opinions, *see, e.g., Nonnenmacher v. United States,* No. 91–6312–HO, 1992 WL 551486 (D.Or. May 7, 1992); *Lafazan v. United States,* No. 78–327, 1979 WL 1496, at *2 (D.N.J. Oct.29, 1979), as well as the lack of a waiver in the statute itself.

In contrast, Plaintiffs' reliance on *Anderson v. United States,* 44 F.3d 795 (9th Cir.1995), is somewhat misplaced. Granted, the court in *Anderson,* without discussing the waiver of sovereign immunity, simply assumed jurisdiction over a taxpayer's suit grounded in section 6335. *Anderson,* however, dealt with a taxpayer's attempt to enjoin a sale *that had not yet occurred.* Accordingly, although the Ninth Circuit itself was silent on the matter, a waiver of sovereign immunity. could have been found in 28 U.S.C. § 2410 which allows taxpayers to quiet title to property on which the United States has a claim. *See Arford v. United States,* 934 F.2d 229, 232–33 (9th Cir.1991) (in quiet title action, section 2410 may waive immunity for section 6335 claim); *Aqua Bar & Lounge, Inc. v. United States,* 539 F.2d 935, 939–40 (3d Cir.1976) (similar).

Dissimilarly, Plaintiffs are attempting to obtain a waiver of sovereign immunity regarding a sale to a third party that is a *fait accompli.* This distinction makes all the difference. After a sale, the IRS is no longer claiming any interest in the seized property and there is no need to quiet its title. *See Nonnenmacher,* 1992 WL 551486 (section 2410 does not confer jurisdiction over section 6335 claim). *See also Lafazan,* 1979 WL 1496, at *2 (section 2410 "provides for a waiver of sovereign immunity only with respect to five enumerated actions; it does not authorize a [section] 6335 suit for damages").[4] In short, section 6335, even in connection with section 2410, does not waive the IRS's sovereign immunity for purposes here.[5]

## C. *26 U.S.C. § 7433*

Plaintiffs are not, however, without recourse. In fact, Plaintiffs' opposition to the IRS's motion to dismiss cites section 7433 of the Tax Code as a possible basis for the waiver of sovereign immunity. Section 7433 provides that a taxpayer may bring an action for damages when, in the collection of a tax, the IRS "recklessly or intentionally disregards" the Tax Code or Treasury regulations.[6] As the First Circuit recently explained, "Congress enacted § 7433 to give taxpayers 'a specific right to bring an action against the Government for damages sustained due to unreasonable actions taken by an IRS employee.'" *Murphy,* 45 F.3d at 524 (quoting legislative history) (other quotations omitted).

The IRS essentially makes three arguments why Plaintiffs' reliance on section 7433

---

**4.** *Cf. United States v. Whiting Pools, Inc.,* 462 U.S. 198, 211, 103 S.Ct. 2309, 2317, 76 L.Ed.2d 515 (1983) ("Ownership of the property is transferred only when the property is sold to a bona fide purchaser at a tax sale."); *Murphy,* 45 F.3d at 523 (same); *Aqua Bar,* 539 F.2d at 937 n. 1 (implying that waiver of sovereign immunity may not lie where taxpayer possessed no title or interest in the property at inception of litigation).

**5.** In a similar vein, neither section 2680(c) of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.,* nor section 702 of the Administrative Procedure Act, 5 U.S.C. § 702 (granting redress to persons "suffering legal wrong[s]"), provides a basis for the waiver of sovereign immunity in this case. The former provision specifically exempts claims "arising in respect to the assessment or collection of any tax" from the FTCA's purview, 28 U.S.C. § 2680(c), while the latter section does not afford an implied grant of subject matter jurisdiction, *Califano v. Sanders,* 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977). In any event, Plaintiffs—although making a general appeal to equity—have not invoked either of these sections.

**6.** In pertinent part, section 7433 states as follows:

> If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the [IRS] recklessly or intentionally disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

is inappropriate. First, the IRS claims that Plaintiffs have not alleged an "intentional" or "reckless" disregard of the Tax Code or regulations.[7] Second, the IRS asserts that Plaintiffs cannot utilize section 7433 since they have not been damaged. Indeed, the IRS claims that, because of certain waivers of fees by the auctioneer, Plaintiffs were actually spared additional costs otherwise mandated by law. Moreover, according to the IRS, had it returned "Deer Crossing" after the first sale, as it was required, it would have immediately reseized the painting. Third, the IRS notes that section 7433 was never raised in the complaint as a basis for the waiver of sovereign immunity.

Neither of the IRS's first two arguments persuade this Court that section 7433 cannot, under any set of facts, waive the IRS's sovereign immunity in this case. The first argument is made without elaboration while the second argument is belied, in part, by Plaintiffs' implication that they were damaged by being prevented from selling "Deer Crossing" on their own at or near its fair market value of $100,000.[8]

As for the IRS's third argument, this Court recognizes that the face of the complaint fails to mention section 7433. Nonetheless, the IRS has not convinced this Court that the generally liberal pleading requirements of the federal rules should preclude Plaintiffs from filing an amended complaint.

Such amendment could specify, for example, (1) more in the way of damages, (2) that the IRS's conduct was either reckless or intentional, and (3) that a waiver of sovereign immunity may be found under section 7433.

Of course, the Court gives no opinion as the ultimate viability of an amended complaint. Indeed, as the IRS pointed out at oral argument, section 7433 has its own exhaustion requirements, e.g., 26 U.S.C. § 7433(d), which may or may not have been met here. The Court only opines that allowing a dismissal, without offering leave to amend, is unwarranted here.

## V. CONCLUSION

For the foregoing reasons, this Court recommends that the IRS's motion to dismiss be ALLOWED without prejudice to Plaintiffs filing an amended complaint.[9]

April 21, 1997.

7. To the extent Plaintiffs rely on the tax *manual*, the IRS points out, correctly, that section 7433 applies only to violations of the Tax Code and the regulations, not the IRM, and thus cannot serve the basis for liability. *See Gonsalves v. I.R.S.*, 975 F.2d 13, 16 (1st Cir.1992).

8. The IRS challenges such implication by referring to several documents which, apparently, indicate that the IRS unsuccessfully attempted to get Plaintiffs to sell "Deer Crossing" on their own. While the IRS may indeed have a strong argument in this regard, such argument should wait until a factual record has been more fully developed. As stated in open court, given the nascency of discovery, this Court is not about to convert the IRS's motion to dismiss into one for summary judgment.

9. The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within ten (10) days of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. See *Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir.1980); *United States v. Vega*, 678 F.2d 376, 378–79 (1st Cir.1982); and *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983). See also *Thomas v. Arn*, 474 U.S. 140, 154–55, 106 S.Ct. 466, 474–75, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.